UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

ARTEMIO CASTELLANOS,

                       Petitioner,

      v.

ROBERT KIRKPATRICK, as Superintendent of
the Wende Correctional Facility, and ANDREW
CUOMO, as Attorney General of the State of New
York,

                       Respondents.

**MEMORANDUM & ORDER**
10-CV-5075 (MKB)

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Petitioner Artemio Castellanos brings the above-captioned amended petition pursuant to

28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his

federal constitutional rights.  Petitioner's claims arise from a judgment of conviction following a

jury trial in the Supreme Court of New York State, Nassau County, on charges of criminal sexual

act in the first degree and sexual abuse in the first degree.  Petitioner was sentenced to

determinate terms of twenty-five years on the first count and a term of seven years on the second

count, to run concurrently.  Petitioner appealed his conviction to the New York Supreme Court

Appellate Division, Second Department ("Appellate Division").  The Appellate Division

affirmed Petitioner's conviction.  *People v. Castellanos*, 884 N.Y.S.2d 126 (App. Div. 2009).

The New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's

decision.  *People v. Castellanos*, 13 N.Y.3d 858 (2009).

        In the instant amended petition, Petitioner seeks a writ of *habeas corpus* on the following

grounds: (1) the trial court unconstitutionally limited Petitioner's questioning of two witnesses;

(2) the trial court unconstitutionally allowed the admission of a coerced confession; (3) the trial court unconstitutionally admitted evidence obtained from an arrest without probable cause; (4) Petitioner is actually innocent; and (5) Petitioner's due process rights, pursuant to *Brady*, were violated by the State's suppression of impeachment evidence concerning Detective Edwin Trujillo. For the reasons discussed below, the amended petition is denied in part, and Respondents are ordered to submit Detective Trujillo's personnel file to the Court for *in camera* review.

## I. Background

### a. Procedural background

On November 3, 2010, Petitioner filed a petition for a writ of *habeas corpus* in this Court, arguing, *inter alia*, that his Sixth and Fourteenth Amendments were violated at trial, and that he was actually innocent. (Pet., Docket Entry No. 1.) On June 10, 2013, Petitioner moved to amend his petition, asked the Court to stay and hold his petition in abeyance so that Petitioner could pursue a motion to vacate judgment in state court pursuant to New York Criminal Procedure Law § 440.10, and requested discovery in this Court. (Mot. for Leave to File Am. Pet. ("Mot. to Amend"), Docket Entry No. 15.) By Order dated July 16, 2013, the Court granted Petitioner's motion to amend the petition. By Memorandum and Order dated July 16, 2013, the Court also granted Petitioner's request for a stay and to hold the petition in abeyance pending the resolution of Petitioner's § 440.10 motion. *Castellanos v. Kirkpatrick*, No. 10-CV-5075, 2013 WL 3777126, at *1 (E.D.N.Y. July 16, 2013). The Court denied Petitioner's discovery request without prejudice. *Id.*

On June 18, 2013, Petitioner filed a motion to vacate his conviction in the Supreme Court of New York, Nassau County, asserting a violation of his due process rights pursuant to *Brady v.*

*Maryland*, 373 U.S. 83 (1963). (Suppl. App. 1–49, annexed to Am. Pet. as Docs. 2–3, Docket Entry No. 20.) On December 4, 2013, Petitioner's motion was denied in a four-page unpublished decision. (Suppl. App. 776–79.) On December 16, 2013, Petitioner sought leave to appeal from the Appellate Division. (Suppl. App. 780.) On March 3, 2014, the Appellate Division denied Petitioner's motion. (Suppl. App. 814.)

### b. Factual background

The evidence at trial established that in approximately 2003, after Petitioner immigrated to the United States from Guatemala, he resided with a childhood friend, Osvaldo Lopez, and Lopez's family. (Tr. of *People v. Castellanos*, No. 2349N/05 ("Trial Tr."), 369:6, 370:24, 442:24–443:2, 443:3–5, annexed to Resp't Opp'n Mem. as Docs. 17–32, Docket Entry No. 6.) Lopez is married to Ana Lilian Rivas de Lopez, and they share two male children, N.L. and C.L. (Trial Tr. 370:3–12, 902:18.) At the time of trial, N.L. was seven years old and C.L. was six years old. (Trial Tr. 370:11–12.) Petitioner lived in his own room upstairs while Lopez and his family lived in a single room on the main floor. (Trial Tr. 375:22–376:21.) Approximately six months after Petitioner immigrated, Petitioner's girlfriend, Flor Sosa also moved into the Lopez home. (Trial Tr. 377:12–15.) During the time in question, May and June of 2005, two other adult men, Elias and Dimas Ramirez ("Elias" and "Dimas") also stayed upstairs, Elias in a separate room and Dimas in an open area usually used for toy storage. (Trial Tr. 379:6–11, 380:7–18.)

In July 2005, C.L. accused Petitioner of molesting him. (Trial Tr. 916:20.) Upon hearing the accusation, C.L.'s parents took C.L. to Dr. Luis Herrera, C.L.'s pediatrician. (Trial Tr. 400:6–12.) Dr. Herrera told them that C.L. needed a special exam, and he called the police. (Trial Tr. 400:10–17.) C.L. was later examined by Dr. Diane Lombardy, who performed a

forensic evaluation of C.L. (Trial Tr. 402:13–16.) At trial, Dr. Lombardy testified that C.L.'s evaluation showed signs of "repetitive penetration from the outside" and "sexual assault over an extended period of time" or "severe chronic constipation."[1] (Trial Tr. 545:15–16, 555:19–20, 568:20.) On July 20, 2005, Detective Trujillo interviewed C.L. (Trial Tr. 652:4–10.) The following day, on July 21, 2005, Petitioner was taken into custody. (Trial Tr. 659:19–25, 662:2–4.) While under interrogation, Petitioner eventually confessed to anally penetrating C.L. on three separate occasions. (Trial Tr. 681:12–23, 694:7–9.)

Petitioner's trial began on May 4, 2006. The state called six witnesses: (1) C.L.,[2] the victim, (2) Ana Lilian Rivas de Lopez, C.L.'s mother, (3) Osvaldo Lopez, C.L.'s father, (4) Dr. Herrera, C.L.'s pediatrician, (5) Dr. Lombardy, the attending physician at Nassau County University Medical Center who examined C.L., and (6) Detective Trujillo, the detective who interviewed C.L. and interrogated Petitioner. Petitioner testified on his own behalf and called two witnesses: (1) Flor Sosa, Petitioner's girlfriend, and (2) Dr. Stephen Ajl, a pediatrician who served as a rebuttal witness to Dr. Lombardy. Petitioner was found guilty of criminal sexual act in the first degree and sexual abuse in the first degree. (Trial Tr. at 149:17–24). On July 10, 2006, Petitioner was sentenced to determinate terms of twenty-five years and seven years, to be served concurrently. (Sentencing Tr. at 70:21–71:24.)

## II.     Standard of review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of *habeas corpus* by a person in custody

---

[1] Dr. Lombardy performed a general physical examination and a colposcopic examination. (Trial Tr. 506:8–11, 531:18–20.) "A colposcope is a free-standing microscope . . . . attached to . . . a camera." (Trial Tr. 506:13–16.)

[2] C.L. gave unsworn testimony.

pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. ---, ---, 135 S. Ct. 1372, 1374 (Mar. 30, 2015) (per curiam); *Johnson v. Williams*, 568 U.S. ---, ---, 133 S. Ct. 1088, 1091 (Feb. 20, 2013).

For the purposes of federal *habeas* review, "clearly established law" is defined as the "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  Discussion

#### a.  Confrontation Clause claims

The Sixth Amendment guarantees a defendant the right to present a defense by calling witnesses on his own behalf and by cross-examining the witnesses who testify against him. *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79

(1986); *Chambers v. Mississippi*, 410 U.S. 284, 294–95 (1973). "The right of cross-examination, though not absolute, is one of the most firmly established principles under Supreme Court law." *Cotto v. Herbert*, 331 F.3d 217, 248 (2d Cir. 2003). This constitutional right to confront a witness generally includes the right to impeach and discredit the state's witnesses. *See Olden v. Kentucky*, 488 U.S. 227, 231 (1988). Although trial judges retain wide latitude to reasonably limit a defendant's right to cross-examine a witness in order to prevent unnecessary repetition or harassment, court-imposed limitations on cross-examination may violate a defendant's Confrontation Clause rights. *Id.* at 232. In this case, Petitioner claims that the trial judge unconstitutionally limited his right to impeach Dr. Lombardy and Detective Trujillo, two witnesses for the State.

### i. Dr. Lombardy

At trial, Dr. Lombardy testified that C.L.'s forensic evaluation revealed signs of sexual assault. (Trial Tr. 545:15–16, 555:19–20.) Her medical conclusion was based on the "[s]moothing of the rugae and the protuberances of the tissues within the rectal vault, and the asymmetry, the irregularity to the smoothing." (Trial Tr. 582:13–16.) After Dr. Lombardy testified, Petitioner learned that, in an unrelated case, Dr. Lombardy initially concluded that a child had been molested based on the same methodology she applied in Petitioner's case, but she later recanted that conclusion while under oath. (Trial Tr. 706:19–707:3.) Petitioner sought to recall Dr. Lombardy and to cross-examine her regarding this recantation. (Trial Tr. 707:4–6.) The trial court denied Petitioner's request.[3] However, the State later recalled Dr. Lombardy to

---

[3] At sidebar later in the trial, Petitioner moved for a mistrial based, in part, on the trial court imposing limits on Petitioner's cross-examination of Dr. Lombardy. During argument, the State revealed that the matter in which Dr. Lombardy had recanted her testimony involved the suspected sexual abuse of two children and Dr. Lombardy's "preliminary" conclusion was based on evidence "nowhere near the type of findings that we had here." (Trial Tr. 1249:4–9.)

rebut the testimony of Petitioner's medical expert, Dr. Ajl. (Trial Tr. 1232:22–23.) On cross-examination, the following exchange took place:

> Q        Dr. Lombardy, have you ever diagnosed children whereupon, using a colposcope and personal physical examination, you found what appeared to be to you sexual abuse of the children and later changed your opinion?
> > MS. FINKELSTEIN: Objection.
> > THE COURT: Sustained.
> Q        Dr., you remember testifying in March at an examination before trial where two young girls, five and three --
> > MS. FINKELSTEIN: Objection.
> Q        five and three --
> > MS. FINKELSTEIN: Objection. Move to strike.
> > THE COURT: Just one second.
> > MR. BERGER: This is credibility, Judge.
> > THE COURT: Just one second. You will limit your cross-examination to the rebuttal evidence. You're not rehashing the case.
> > MR. BERGER: I'm not. This is credibility, which is always an issue, Judge. This is so unfair what you're doing. I've got a right to challenge the witness' credibility.
> > THE COURT: You have an exception. Move onto your next question.

(Trial Tr. 1236:3–25.) Later, the trial court reiterated that Petitioner's attempted cross-examination "went outside the scope of that which was brought on rebuttal." (Trial Tr. 1252:15–19.)

    Petitioner argues that "[o]nce Lombardy was permitted to testify on rebuttal about how her conclusions were correct, defense counsel should have been permitted to investigate the basis for such conclusions." (Pet'r Reply 7, Docket Entry No. 8.) The Court agrees. With respect to C.L., Dr. Lombardy conducted both a physical examination and a colposcopic examination. Petitioner brought to the trial court's attention that in a previous and unrelated trial, Dr. Lombardy, using the same methodology, initially concluded that two children had been sexually assaulted and then, some eight months later, determined that her initial conclusion was

erroneous.  (Trial Tr. 1250:12–24.)  Petitioner sought to question Dr. Lombardy about this series

of events in particular, and about the reliability of her conclusions after a single evaluation in

general.  The trial court unreasonably denied Petitioner this opportunity.

Respondent argues the any curtailment of Petitioner's cross-examination of Dr.

Lombary did not prevent the jury from assessing Dr. Lombardy's credibility because Petitioner

was allowed to cross-examine Dr. Lombardy at length and Dr. Ajl testified about his

disagreement with Dr. Lombardy's conclusion.  (Resp't Opp'n Mem. 24 n.14, Docket Entry

No. 6)  However, Petitioner is not precluded from stating a Sixth Amendment violation just

because the trial court allowed Petitioner to exercise some of his Sixth Amendment rights.

Petitioner, through cross-examination and the presentation of Dr. Ajl, attempted to discredit Dr.

Lombardy — the only corroborative medical witness presented by the State.  Petitioner's cross-

examination of Dr. Lombardy regarding her testimony in the prior case, if allowed to proceed,

would have directly concerned this component of his defense.  *See Gersten v. Senkowski*, 426

F.3d 588, 608 (2d Cir. 2005) (noting, in the context of a *habeas* claim based on ineffective

assistance of counsel, that "medical expert consultation or testimony is particularly critical to an

effective defense in sexual abuse cases where direct evidence is limited to the victim's

testimony").

Respondent also argues that allowing Petitioner to cross-examine Dr. Lombardy on her

recantation of a previous medical opinion would have "ushered a multiplication and confusion of

issues . . . ."  (Resp't Opp'n Mem. 23–24 (citing *Gordon v. United States*, 344 U.S. 414, 420 n.13

(1953)).)  The Court disagrees.  Petitioner was interested in questioning Dr. Lombardy about her

evaluative methodologies and identifying any infirmities or limitations that resulted in her

recantation in the other case.  The trial court was capable of monitoring and controlling any

confusion that may have resulted from exploring this material issue, and it should have done so instead of precluding Petitioner from exploring the issue altogether.[4]  *See e.g.*, *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63 (2d Cir. 1969) ("While a witness' testimony regarding collateral matters — here an unrelated trial — may not be refuted by calling other witnesses or by production of extrinsic evidence, there is nothing improper in asking questions relating to extrinsic matters in the hope of undermining the witness' credibility.").

If a reviewing court determines that the denial of a defendant's opportunity to impeach a witness for bias or credibility was constitutionally improper, the denial is subject to a harmless error analysis.  *Van Arsdall*, 475 U.S. at 684.  In reviewing for harmless error, a *habeas* court cannot grant relief unless the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Harmless error analysis includes consideration of the following factors: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  *Van Arsdall*, 475 U.S. at 684 (citations omitted); *United States v. Treacy*, 639 F.3d 32, 45 (2d Cir. 2011) (quoting *Cotto v. Herbert*, 331 F.3d 217, 254 (2d Cir. 2003)).

---

[4]  Respondent argues that Dr. Lombardy's actions — voluntarily recanting her prior conclusion and allowing the clinical evidence to guide her to a final decision — "underscore, rather than undermine, her level of medical ethics and expertise."  (Resp't Opp'n Mem. 23.) Respondent's argument, perhaps inadvertently, suggests that Dr. Lombardy's actions were material to the issues presented at trial.  Whether the ultimate effect of cross-examination on this topic would have benefited Petitioner or Respondent calls for unwarranted speculation.

With respect to the first factor identified by *Van Arsdall*, Dr. Lombardy's testimony was of great importance to the State's case. Dr. Lombardy's testimony and underlying medical records were the only corroborative medical evidence presented by the prosecution. Similarly, with respect to the second factor, Dr. Lombardy's testimony was not cumulative. As the State's sole source of medical evidence, Dr. Lombardy's testimony was unique. As to the third factor, Dr. Lombardy's testimony was corroborated by C.L.'s testimony, C.L.'s mother's testimony, and Detective Trujillo's testimony relating to Petitioner's confession. Dr. Lombardy was contradicted by Dr. Ajl and Petitioner's own testimony.

With regard to the fourth factor, Petitioner was permitted an otherwise extensive cross-examination. Specifically, Petitioner cross-examined Dr. Lombardy regarding her interview of C.L.'s mother, (Trial Tr. 557:8–559:7), whether Dr. Lombardy was aware of statements made by C.L.'s father upon first visiting Nassau County Medical Center on July 1, 2006, (Trial Tr. 560:3–561:6), whether Dr. Lombardy reviewed a triage assessment made by a nurse on that date, (Trial Tr. 562:12–17), whether Dr. Lombardy's colposcopy slides were indicative and consistent with non-penile penetration such as severe chronic constipation or penetration by object, (Trial Tr. 566:4–16), her inability to identify a time in which the penetration occurred, (Trial Tr. 572:21–573:12), her inability to specify the number of times the penetration occurred, (Trial Tr. 576:13–21), the lack of scarring, lacerations or fissures, (Trial Tr. 578:2–23), the exact basis of her conclusion, (Trial Tr. 582:11–16), the possibility that biological factors could have caused "smoothing of rugae," (Trial Tr. 567:2–14), the fact that only one colposcopy was performed, (Trial Tr. 588:14–15), and her lack of publications (Trial Tr. 572:19–20). In addition, Petitioner had the opportunity to conduct a re-cross-examination of Dr.

Lombardy. (Trial Tr. 590:8–19.) Except for an opportunity to discuss Dr. Lombardy's recantation in a prior case, Petitioner performed an exhaustive cross-examination of the witness.

Finally, the State's case against Petitioner was strong. In addition to Dr. Lombardy's medical testimony that C.L. had been sexually abused, the State also presented the unsworn testimony of C.L. and Petitioner's own confession.

Applying these factors to the present case, although the State trial court's restriction on the cross-examination of Dr. Lombardy was improper, it did not prejudice Petitioner and the error is harmless.

### ii. Detective Trujillo

Petitioner also claims that he was improperly denied the opportunity to cross-examine Detective Trujillo regarding Detective Trujillo's alleged history of soliciting false confessions. Unlike Petitioner's claim related to Dr. Lombardy's cross-examination, some cross-examination of Detective Trujillo on this topic was permitted. Specifically, Petitioner was allowed to ask Detective Trujillo about whether he had ever knowingly taken a false confession or whether he had framed anyone. (Trial Tr. 755:16–20.) While Petitioner did not receive the answer he would have preferred, he was allowed to pose the question. The jury had the opportunity to weigh the credibility of Detective Trujillo's testimony that he had never framed anyone.

Evaluating the *Van Arsdall* factors, as with the testimony of Dr. Lombardy, Detective Trujillo's testimony was important to the State's case and was not cumulative. There was both supporting evidence in the form of C.L.'s testimony and Petitioner's confession, though Petitioner's testimony contradicted Detective Trujillo's account of the circumstances surrounding the confession. However, the State's case was strong and some cross-examination on the topic was permitted. In light of this general questioning, the limitation on Petitioner's

ability to ask about Detective Trujillo's history is unlikely to have had a substantial or injurious effect on the verdict. *See Rosado v. Unger*, No. 11-CV-3747, 2012 WL 5871607, at *13–14 (S.D.N.Y. May 4, 2012) (finding limitation on cross-examination harmless where trial court had deemed an issue irrelevant to a witness' credibility and the petitioner had been allowed to cross-examine the witness on other issues that bore on her credibility), *report and recommendation adopted*, No. 11-CV-3747, 2012 WL 5871606 (S.D.N.Y. Nov. 20, 2012). Therefore, even assuming that the exclusion of further questioning violated the Confrontation Clause, such an error was harmless in light of this opportunity for some cross-examination. *See Benn v. Greiner*, 402 F.3d 100, 106–07 (2d Cir. 2005) (finding limitation of cross-examination harmless because the trial court permitted cross-examination on "the same evidential hypothesis as the excluded cross-examination" and because "the prosecution's case for guilt was in no way weak or marginal"); *Narrod v. Napoli*, 763 F. Supp. 2d 359, 381 (W.D.N.Y. 2011) (finding limitation of cross-examination harmless because of "overwhelming strength of the prosecution's case and the fact that defense counsel's cross-examination of [the investigator] was not otherwise cabined").

### b. Coerced confession

In evaluating Petitioner's claim that his confession was false and coerced, the Appellate Division held that the "hearing court properly determined that the defendant's statements to law enforcement officials were voluntarily made after a valid waiver of his *Miranda* rights." *Castellanos*, 884 N.Y.S.2d at 127. Petitioner has failed to show that the Appellate Division's affirmance was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1); *Johnson*, 568 U.S. at ---, 133 S. Ct. at 1091.

As the Supreme Court stated in *Dickerson v. United States*, 530 U.S. 428 (2000), the correct test for determining whether a statement is voluntary or coerced under the Due Process

Clause is "whether a defendant's will was overborne" by the circumstances surrounding the giving of a confession. *Dickerson*, 530 U.S. at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). This evaluation takes into consideration "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Id.* (quoting *Schneckloth*, 412 U.S. at 226); *see also Colorado v. Connelly,* 479 U.S. 157, 163–64, 163 n.1 (1986).

Petitioner argues that the Appellate Division "failed to expressly identify the totality of the circumstances test as its mechanism for reviewing the Fourteenth Amendment Due Process claim," and that if the Appellate Division applied the correct test, it did so improperly "when it failed to consider any of the circumstances other than the coercion factor." (Pet'r Mem. 73–74, Docket Entry No. 2.) Under the deferential standard of *habeas* review, federal courts do not have the authority to require state courts to expressly state a legal standard upon which they rely. Federal courts "are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

The record in this case contains substantial evidence based on which the Appellate Division could reasonably have concluded that Petitioner's confession was voluntarily given. The relevant disputes — regarding the nature of Detective Trujillo's interrogation and threats, (Pet'r Mem. 77–78); Petitioner's vulnerability, (*id.* at 78–79, 82); Petitioner's literacy, (*id.* at 82); and whether Petitioner confessed, (*id.* at 84) — are ultimately resolved based on witness credibility, which the hearing court and the jury are uniquely qualified to judge. *See Holland v.*

*Donnelly*, 216 F. Supp. 2d 227, 234 (S.D.N.Y. 2002) ("Even if the judge might reasonably have reached a different conclusion, the decision actually reached by the state judge, who was able to observe the defendant and evaluate the witnesses' credibility after presiding over an extremely extensive evidentiary hearing, cannot remotely be characterized as 'unreasonable.'"), *aff'd*, 324 F.3d 99 (2d Cir. 2003). Thus, the Court cannot conclude that the Appellate Division's voluntariness finding was contrary to, or an unreasonable application of, clearly established Federal law. *See Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) ("[Section 2254's] presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility.").

### c. Arrest without probable cause

Petitioner claims that the pretrial hearing court should have suppressed Petitioner's confession as the fruit of an unlawful arrest. (Pet'r Mem. 91.) To the extent that Petitioner raises a Fourth Amendment violation, such a claim is not generally cognizable on *habeas* review. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Young v. Conway*, 715 F.3d 79, 92 (2d Cir. 2013) ("*Fourth Amendment claims are not reviewable* by the federal courts when raised in a petition brought under § 2254 *unless the state prisoner shows* that he or she has not had a full and fair opportunity to litigate that claim in the state court." (quoting *Graham v. Costello*, 299 F.3d 129, 133–34 (2d Cir. 2002))). The Second Circuit has limited federal habeas review of Fourth Amendment claims to two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a

corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citation omitted); *see also Pearson v. LaValley*, No. 12-CV-3386, 2013 WL 1777770, at *2 (S.D.N.Y. Apr. 25, 2013) ("[U]nder Second Circuit law, federal habeas review of *Payton* and other Fourth Amendment contentions is warranted only if the state court provides no corrective procedures at all to redress Fourth Amendment violations, or if there was an unconscionable breakdown in that process." (citation and internal quotation marks omitted)). If a petitioner had a full and fair opportunity to litigate his or her Fourth Amendment claim in the state courts, regardless of whether he or she took advantage of that opportunity, "the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Costello*, 299 F.3d at 134.

New York law provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues at a suppression hearing held before trial. *See* N.Y. Crim. Proc. Law §§ 710.10–70. A defendant may be permitted to call a witness at a suppression hearing, but this right is not absolute under New York law. *People v. Fowler*, 876 N.Y.S.2d 498, 499 (App. Div. 2009) (citing *People v. Chipp*, 75 N.Y.2d 327, 336–337 (1990)). A defendant's request to call a witness at a suppression hearing must be "supported by a bona fide factual predicate demonstrating that the witness might provide material, noncumulative evidence." *Id.* (citations and internal quotation marks omitted).

The pretrial hearing court resolved Petitioner's Fourth Amendment claims in a pretrial suppression hearing. (Resp't Opp'n Mem. 5.) At the conclusion of the hearing, the court found that the prosecution had shown that there was sufficient probable cause for Petitioner's arrest. (Pretrial Hr'g Tr. 177:22–178:2, annexed to Resp't Opp'n Mem. as Docs. 9–11.) Petitioner does

not challenge the procedures available under New York law. (Pet'r Mem. 92.) Instead, Petitioner argues that "he was denied the 'opportunity for full and fair consideration' because of an 'unconscionable breakdown' in the process provided to him." (*Id.*) This breakdown, according to Petitioner, occurred when the prosecution chose not to call Detective Diane Barbieri at the suppression hearing and the pretrial hearing court refused to allow Petitioner to call her absent a subpoena. (*Id.* at 96–97.) Petitioner characterizes this argument as relating to the procedure rather than the substance of the state court decisions. (*Id*. at 93.) Petitioner does not, however, argue that New York law runs afoul of due process in granting the pretrial hearing court discretion to deny a defendant's request to call a witness. (Pet'r Reply 29–30.) Nor does Petitioner point to any clearly established Supreme Court precedent recognizing a constitutional requirement that the prosecution must call all witnesses involved in a defendant's arrest and interrogation at a pretrial suppression hearing. The pretrial hearing court found, and the Appellate Division affirmed, that "evidence presented by the People demonstrated that the police had probable cause to arrest" Petitioner. *Castellanos*, 884 N.Y.S.2d at 127. Petitioner has failed to show a *bona fide* factual predicate demonstrating that Detective Barbieri possessed material evidence on the question of whether that defendant's incriminating statements were produced by overtly or inherently coercive methods. Given the discretion afforded to the pretrial hearing court, the court's determination that Petitioner had failed to offer proof that Detective Barbieri would provide material, noncumulative evidence is not an unconscionable breakdown in the process. *See Munford v. Graham*, 467 F. App'x 18, 19 (2d Cir. 2012) ("These allegations cannot constitute an 'unconscionable breakdown' in New York's procedures because, under New York law, a trial court acts within its discretion in deciding not to view a surveillance video when the record before it was more than adequate to establish probable cause."); *Malik v. McGinnis*,

No. 06-CV-3361, 2010 WL 3239216, at *9 (S.D.N.Y. Aug. 16, 2010) ("[T]he decision to exclude the testimony as cumulative is the sort of routine decision that is made by courts in the course of a pretrial hearing. Thus, it did not represent an 'unconscionable breakdown' in the *Mapp* hearing process."), *report and recommendation adopted*, No. 06-CV-3361, 2010 WL 4840131 (S.D.N.Y. Nov. 17, 2010). Petitioner's Fourth Amendment claim is thus barred under *Stone*. *Stone*, 428 U.S. at 494.

### d. Actual innocence

Petitioner next argues that he is entitled to *habeas* relief because he is actually innocent. Such a claim is not cognizable on *habeas* review. A showing of actual innocence serves merely as a gateway to the airing of a petitioner's procedurally defaulted claims and is not itself cognizable in *habeas* as a free-standing basis for relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). A *habeas* court is, in short, concerned "'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'" *Id.* (quoting *Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923)). To put it simply, the Supreme Court has yet to hold that there is a freestanding federal constitutional claim of actual innocence and therefore Petitioner cannot show that the state court's decision denying his actual innocence claim was contrary to, or an unreasonable application of, clearly established federal law. *See District Attorney's Office v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether [a federal right to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the

high standard any claimant would have to meet." (citations omitted)); *see also McQuiggin v. Perkins*, 569 U.S. ---, ---, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (alteration, citation and internal quotation marks omitted)).

Even assuming *arguendo* the existence of a freestanding federal claim of actual innocence, the Supreme Court has suggested that the threshold showing for such a claim would be "extraordinarily high." *Herrera*, 506 U.S. at 417; *see also Osborne*, 557 U.S. at 71 (noting high standard that actual innocence claimants would have to meet). This threshold would require proof of innocence that meets and exceeds the standard articulated in those cases which allowed a colorable claim of actual innocence to revive procedurally defaulted claims. *See Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518, 555 (2006) ("The sequence of the Court's decisions in *Herrera* and *Schlup* — first leaving unresolved the status of freestanding claims and then establishing the gateway standard — implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*."). As discussed below, Petitioner fails to meet this threshold.

To satisfy the standard articulated in those cases reviving procedurally defaulted claims, "a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (citing *House*, 547 U.S. at 521, 538). A credible claim of actual innocence consists of "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or to remove the double negative, that more likely than not any

reasonable juror would have reasonable doubt.'" *Rivas*, 687 F.3d at 541 (quoting *House*, 547

U.S. at 538). The district court must "'consider all the evidence, old and new, incriminating and

exculpatory,' and, viewing the record as a whole, . . . 'make a probabilistic determination about

what reasonable, properly instructed jurors would do.'" *Id.* (quoting *House*, 547 U.S. at 538)

Petitioner fails to set forth a claim of actual innocence that is either credible or

compelling. Petitioner's claim is not credible because, as Petitioner acknowledges, he has not

presented any newly discovered evidence. (Pet'r Mem. 107.) Petitioner seeks to meet the

credibility standard by pointing to evidence known to the parties and the court but not the jury:

evidence about other cases Petitioner attempted to bring before the jury during the cross-

examination of Dr. Lombardy and Detective Trujillo. *Id.* Petitioner does not rely on or present

any "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence," that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Rivas*, 687 F.3d at

546–47 (finding that the petitioner had "a close case" that only passed the *Schlup* standard

because the petitioner was able to present reliable scientific expert testimony not presented to the

jury and the Second Circuit "would not expect a lesser showing of actual innocence to satisfy the

*Schlup* standard"); *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (noting that "the type of

evidence on which an actual innocence claim may be based" is limited to "new reliable

evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence — that was not presented at trial" (citing *Schlup*, 513 U.S. at 324)).

Assuming that the impeachment material precluded by the trial court could be considered

new evidence, Petitioner's claim of actual innocence is not compelling as he fails to show that it

is "more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at

327. In support of his actual innocence claim, Petitioner argues that the jury heard a corrupted

and incomplete body of evidence because it was "exposed to a confession which was likely coerced" and because it was "precluded from learning about information which would indisputably reflect on the credibility of two primary prosecution witnesses." (Pet'r Mem. 107.) At trial, Petitioner had the opportunity to question Detective Trujillo about whether he had framed a suspect in a case where the suspect confessed and another person later acknowledged guilt. (Trial Tr. 755:16–20.) The jury heard the opinion of Petitioner's expert that Dr. Lombardy's findings went against the current state of "scientific" understanding and that there was no evidence of penetration. (*Id.* at 1081:12–1082:15.) The jury was instructed to weigh the credibility of various witnesses, (*id.* at 1440:8–20), and had the opportunity to decide whether to believe Petitioner's account of his interrogation and confession or that of Detective Trujillo. Nevertheless, they rendered a guilty verdict. Petitioner has not shown that this conclusion was unreasonable. *See, e.g.*, *Madison v. Hulihan*, No. 09-CV-337, 2012 WL 1004780, at *6–7 (E.D.N.Y. Mar. 23, 2012) (finding no constitutional violation where jury was aware of inconsistent testimony but still found petitioner guilty); *Brockington v. Marshal*, No. 07-CV-286, 2011 WL 4424429, at *5 (W.D.N.Y. Sept. 21, 2011) (finding that petitioner's new evidence — consisting of the medical examiner's case narrative — failed to demonstrate that it was more likely than not that a reasonable juror would have found him guilty beyond a reasonable doubt); *Rosario v. Ercole*, 582 F. Supp. 2d 541, 559 (S.D.N.Y. 2008) (holding that where the trial involves "a credibility contest" between the parties' dueling evidence, the court could not "conclude that no reasonable juror would have been persuaded by the prosecution's case"). Petitioner has not shown that a reasonable juror would not have convicted him based on his purported new evidence.

### e. *Brady* violation

"There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)); *see also Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (extending *Brady* to impeachment material).

Petitioner argues that the State failed to turn over *Brady* material that could have been used to impeach Detective Trujillo, namely: (1) Detective Trujillo's involvement in three criminal cases, where all charges were ultimately dismissed and two of which involved false confessions; (2) Internal Affairs Unit ("IAU") investigations of Detective Trujillo; (3) Special Investigations Bureau ("SIB") investigations of Detective Trujillo; and (4) Detective Trujillo's involvement in four federal civil rights actions for alleged misconduct, three of which involved claimants alleging that Detective Trujillo, alone or in concert with others, "engaged in conduct fairly described as fabrication or coercion . . . ." (Pet'r Supp. Reply 7–8, Docket Entry No. 22.)

### i. The evidence is favorable to Petitioner

The law is clear that *Brady* and its progeny require that the government disclose material impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio*, 405 U.S. at 154–55. This may include information found in an officer's personnel file. *See United States v. Kiszewski*, 877 F.2d 210, 215–16 (2d Cir. 1989) (finding that the trial court was required to conduct *in camera* review of FBI agent's personnel file to determine whether file contained *Brady* material that should have been disclosed to defense); *Gonzalez v. United States*, No. 12-CV-5226, 2013 WL 2350434, at *4 (S.D.N.Y. May 23, 2013) ("Impeachment evidence

found in an officer's personnel file may fall under *Brady* if the evidence is favorable to the accused, material, and known to either the prosecutors or investigators working on the case."); *see also Milke v. Ryan*, 711 F.3d 998, 1016–19 (9th Cir. 2013) (granting *habeas* relief where the state failed to disclose personnel records containing evidence of extensive misconduct and dishonesty by police detective who was primary witness at trial). In this case, the alleged undisclosed material is favorable to Petitioner in that it could have potentially served as impeachment material of Detective Trujillo, who was a key witness for the State.

ii.     **The evidence was suppressed by the State**

A petitioner alleging a *Brady* violation must also show that the favorable evidence was suppressed by the State. *Poventud*, 750 F.3d at 133. This requirement is also satisfied. Unlike cases questioning whether knowledge of the officer's impeachment material can be imputed to the prosecution, "this case involves actual knowledge on the part of the People." *People v. Hubbard*, 991 N.Y.S.2d 297, 301–02 (Sup. Ct. 2014), *aff'd*, --- N.Y.S.3d ---, 2015 WL 6488538 (App. Div. Oct. 28, 2015). Here, the prosecutor made a motion to preclude questioning on this very topic and indicated her awareness of at least some of the information contained in Detective Trujillo's file.

iii.    **The Court needs additional information to determine whether Petitioner was prejudiced**

Finally, to succeed on a *Brady* claim, a petitioner must also demonstrate that the suppression of the favorable evidence prejudiced the petitioner at trial. *Poventud*, 750 F.3d at 133. Evidence is material — and prejudice occurs — when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. "A 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the

outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678). "A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Smith v. Cain*, 565 U.S. ---, ---, 132 S. Ct. 627, 630 (2012) (quoting *Kyles*, 514 U.S. at 434) (internal quotation marks omitted). Because the Court only has the government's description of the allegations contained in Detective Trujillo's file and has not seen the actual file, the Court cannot determine whether the information, if disclosed, might have created a reasonable probability that the outcome of the trial would have been different. If the information creates such a probability, then the information is material and its nondisclosure would constitute a *Brady* violation. Because the records in question are privileged personnel records, they should be reviewed *in camera* in the first instance.

## IV. Conclusion

For the foregoing reasons, the Court denies Petitioner's motion in part and orders Respondents to submit Detective Trujillo's personnel file to the Court for *in camera* review.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: November 18, 2015
Brooklyn, New York